

DA 11-0132

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 296

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MICHAEL HARLOW HASS,

     Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DC 09-0427
                  Honorable Gregory R. Todd, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Brad L. Arndorfer, Arndorfer Law Firm, P.C., Billings, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
          Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, David Carter, Deputy County
          Attorney, Billings, Montana


                       Submitted on Briefs:  November 16, 2011

                               Decided:  November 29, 2011


Filed:

_____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The State charged Michael Harlow Hass by Information in the Thirteenth Judicial District Court, Yellowstone County, with three offenses alleged to have been committed in August 2009:  Count I, driving a motor vehicle while under the influence of alcohol (DUI); Count II, driving while license is suspended or revoked; and Count III, unlawful possession of an open alcoholic beverage container.  The State alleged that Hass has three prior DUI convictions, making Count I a felony.  *See* §§ 61-8-731, -734(1)(b), MCA (2007).[1]  Counts II and III are misdemeanors.  *See* §§ 61-5-212(1)(b), 61-8-460(3), MCA.

¶2     Hass filed a motion challenging the validity of one of his prior DUI convictions—in particular, a conviction entered by the Yellowstone County Justice Court in 1994. Hass argued that his constitutional rights to counsel and to due process were violated when the trial judge in that case allowed Hass's counsel to withdraw on the day of trial and then proceeded to try and convict Hass in absentia.  The District Court held an evidentiary hearing and denied Hass's motion from the bench.  Thereafter, pursuant to a plea agreement, Hass pleaded guilty to fourth-offense DUI, reserving his right to appeal the District Court's denial of his motion.  The State moved to dismiss Counts II and III. The District Court accepted the plea and imposed sentence.

¶3     Hass now appeals, raising one issue:  whether the District Court erred in denying his motion challenging the validity of his 1994 conviction.  We reverse and remand for further proceedings as detailed below.

---

[1] The law in effect at the time of the offense controls as to the possible sentence. *State v. Johnson*, 2011 MT 286, ¶ 13, ___ Mont. ___, ___ P.3d ___; *State v. Brinson*, 2009 MT 200, ¶ 16 n. 3, 351 Mont. 136, 210 P.3d 164.

## BACKGROUND

¶4     Our focus in this appeal is on Hass's 1994 conviction. The record from that conviction reflects the following chronology of events.

¶5     Shortly after midnight on March 5, 1993, Hass was cited for misdemeanor DUI in Billings. Bail bond was posted later that same day. On June 11, the bond was forfeited due to "non-appearance." The Justice Court issued an arrest warrant on June 14. On July 26, Hass entered a plea of not guilty. The Justice Court record specifically indicates that Hass did not waive his right to counsel. He advised the court that Greg Johnson was his attorney. On August 3, the Justice Court set trial for August 31.

¶6     On August 20, Hass sent the court a letter requesting a change to his bond or to be released on his own recognizance. The court replied by letter dated August 24 denying this request. In addition, the court noted that Greg Johnson had advised the court that he was not representing Hass in this matter. The court inquired whether Hass intended to represent himself and whether he wanted the court to call a jury for the August 31 trial date. Hass sent another letter on August 25 requesting a continuance and again asking to be released. The Justice Court replied on August 30 denying both requests. The court noted that he was serving jail time on another sentence and, thus, could not be released.

¶7     Hass appeared in court on August 31 without counsel. According to the Justice Court's notes, he seemed "emotionally unstable." The court contacted a public defender, Jeff Michael, who appeared and requested a continuance. The court granted the request and reset trial for September 22. Thereafter, trial was continued to November 22 and

then again to January 24, 1994. Both continuances were upon motions filed by the defense. The reasons for the two continuances were not stated, however.

¶8 On January 24, Michael appeared in court. Hass, who evidently had been released in the interim, was not present. Michael filed a motion to withdraw as counsel. The motion was dated January 24, 1994. As grounds, Michael stated in the motion: "Client has not made contributable contact with his attorney to prepare a proper defense." The Justice Court granted the motion. The court then proceeded directly to hold a bench trial in absentia. After hearing the State's evidence, the court found Hass guilty of DUI.

¶9 The Justice Court issued an arrest warrant on January 25. On July 20, Hass appeared for sentencing. The court imposed a fine, plus 6 months in jail with 45 days suspended. At some point, Hass submitted an undated affidavit to the Justice Court explaining why he had not been present for his trial on the DUI charge. He stated that he had been "snowed in at Outlook, MT," without a car, gas, money, or phone, and thus had not been "voluntarily absent" from the trial. Hass stated that his attorney had been notified, by way of his brother and by mail, that Hass was unable to attend.

¶10 At the evidentiary hearing in the present case, Hass testified that he did not recall many of the events detailed above. He attributed this in part to the fact that he had been hit by a car six years earlier, and in part to the fact that he had been dealing with divorce and custody issues back in 1993. Hass felt certain, however, that he did not receive notice of the January 1994 trial setting and did not receive notice of Michael's motion to withdraw as his counsel.

4

¶11 Michael also testified at the hearing. Because the public defender file in Hass's case had since been destroyed, Michael could only testify as to his general practices. During that period (1993 to 1994), his caseload consisted of roughly 100 misdemeanor cases at a time. When asked about the motion to withdraw in Hass's case, Michael testified that Hass would not have had notice of the motion since Michael "waited until the ninth second to file [it]." As for his reasons for filing it, Michael stated:

> I think [the motion] kind of speaks for itself, that there just wasn't enough contact with the client to even prepare a defense, to even -- I mean this would have been prepared probably right before trial. I mean, standing at the door waiting to go to trial wondering where your client's at. And probably just said I couldn't even try a case in absentia because I hadn't had enough contact with my client to even know if there was a defense.

Michael acknowledged, though, that he likely had contact with Hass early on, while Hass was still incarcerated, given his practice of making regular visits to his incarcerated clients. Michael also agreed that if he had stayed on as counsel, he could have objected to any improper testimony or evidence offered by the State and could have made sure the State presented sufficient evidence to support a conviction. Michael indicated, however, that he thought it would have been pointless to do so

> because if you've ever sat through the trial in absentia, the State puts the cop on and he testifies. It's uncontroverted testimony. So the facts are taken. There's nobody -- I mean, what's the defense? The guy gets up and says, I pulled him over and I did the test, I did this, I did that. And if he didn't have a driver's license, and you sit there and go, Okay. I mean, I've sat through trials in absentia.

> . . .

> My -- my way of doing things is we had the police reports. I've read all the police reports. They have the officer to testify. I didn't have any

5

defense. If I thought that there was a shot at winning a case, with or without a Defendant, I would have tried it.

¶12 In upholding the 1994 conviction, the District Court concluded that Hass had not presented sufficient evidence to meet his burden. In this regard, the court noted that Hass and Michael could not remember much about the specifics of the case. Furthermore, the court stated that it believed the authority cited by the State was controlling. One of the cases, which the prosecutor had characterized as "directly on point," was *State v. Weaver*, 2008 MT 86, 342 Mont. 196, 179 P.3d 534. In *Weaver*, the defendant claimed that being tried in absentia on a misdemeanor charge violated his constitutional right to be present. We held that he had effectively waived this right, however, by being willfully absent from trial or by keeping himself deliberately ignorant of the trial date. *Weaver*, ¶¶ 16, 22. Here, based on the Justice Court record and the testimony at the hearing, the District Court inferred that Hass more than likely knew about the January 24 trial date and simply failed to make it to court. Conversely, if Hass did not know about the trial date, the court reasoned that he had failed to make appropriate arrangements to have his mail forwarded from his ex-wife's house and had failed to maintain sufficient contact with his attorney.

**STANDARDS OF REVIEW**

¶13 Whether a prior conviction may be used for sentence enhancement is generally a question of law, for which our review is de novo. *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64. However, in determining whether a prior conviction is invalid, the trial court may first need to make findings of fact, based on oral and documentary

6

evidence presented by the parties, regarding the circumstances of that conviction. We will not disturb such findings unless they are clearly erroneous. *Maine*, ¶ 12.

## DISCUSSION

¶14 The Due Process Clause of Article II, Section 17 of the Montana Constitution protects a defendant from being sentenced based upon misinformation. *Maine*, ¶ 28. A constitutionally infirm prior conviction used for enhancement purposes constitutes misinformation of constitutional magnitude. *Maine*, ¶ 28. Thus, in Montana, it is well established that the State may not use a constitutionally infirm conviction to support an enhanced punishment. *Maine*, ¶ 28; *accord State v. Burns*, 2011 MT 167, ¶ 40, 361 Mont. 191, 256 P.3d 944; *Weaver*, ¶ 11; *State v. Mann*, 2006 MT 33, ¶ 15, 331 Mont. 137, 130 P.3d 164; *State v. Snell*, 2004 MT 334, ¶ 25, 324 Mont. 173, 103 P.3d 503; *State v. Joseph*, 2003 MT 226, ¶ 8, 317 Mont. 186, 75 P.3d 1273.

¶15 We employ a three-step framework for evaluating collateral challenges to prior convictions offered for sentence enhancement purposes:

1. a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects;

2. the defendant has the burden to overcome the presumption of regularity by producing affirmative evidence and persuading the court, by a preponderance of the evidence, that the prior conviction is constitutionally infirm; and

3. once the defendant has done so, the State has the burden to rebut the defendant's evidence. There is no burden of proof imposed on the State to show that the prior conviction is valid, however. The State's burden, rather, is only to rebut the defendant's showing of invalidity.

*State v. Chaussee*, 2011 MT 203, ¶¶ 12, 13, 361 Mont. 433, 259 P.3d 783; *accord State v. Chesterfield*, 2011 MT 256, ¶ 20, 362 Mont. 243, ___ P.3d ___.

7

¶16 The defendant may meet his or her burden with direct evidence or circumstantial evidence. But whatever evidence is offered, it must be "affirmative evidence," which means evidence demonstrating that certain facts actually exist or, in the context of a collateral challenge, that certain facts actually existed at some point in the past—e.g., that an indigent defendant actually requested the appointment of counsel but counsel was actually refused. Ambiguous documents, self-serving and conclusory inferences, and forcing the State to prove the validity of the prior conviction, when such validity is already presumed, do not suffice as affirmative evidence for purposes of meeting the defendant's burden. *Chaussee*, ¶ 18.

¶17 As a preliminary matter, we briefly address two points argued by the parties—one by Hass, the other by the State. First, Hass cites § 37-61-403(2), MCA, which provides that "[t]he attorney in an action or special proceeding may be changed at any time before or after judgment or final determination . . . upon the order of the court, upon the application of either client or attorney, *after notice from one to the other*" (emphasis added). Hass contends that he was never given notice of Michael's motion to withdraw and "[f]or that reason [the 1994] conviction cannot stand." This argument misapprehends the relevant issue, however, which is whether the State has offered a "constitutionally infirm" conviction to support an enhanced punishment. Assuming, for the moment, that § 37-61-403(2), MCA, applied to Michael's motion to withdraw and was violated when the Justice Court granted that motion, a mere statutory violation does not necessarily, in and of itself, arise to a constitutional violation. Hass would need to demonstrate that a

8

constitutional right was infringed by the supposed violation of the notice requirement in § 37-61-403(2), MCA.

¶18    Second, as it did in the District Court, the State again analogizes this case to *Weaver*.  In so doing, the State maintains that Hass had a "duty to keep apprised of his trial date" and "needed to stay in contact with his attorney."  Asserting that Hass "had already demonstrated a willingness not to appear for court," the State argues that his 1994 affidavit shows that he knew about his January 24 trial date and simply failed to show up.  Alternatively, the State argues that Hass "kept himself deliberately ignorant of the trial date."  These arguments, however, are beside the point.  *Weaver* involved a right of presence claim.  Hass, on the other hand, does not contend that his right to be present was violated.  He contends, rather, that his rights to counsel and to due process were violated.

¶19    Turning then to the due process and right to counsel issues, our decision herein is grounded on the following salient facts and law.  First, "[i]n all cases in which the defendant is charged with a misdemeanor offense, the defendant may appear by counsel only, although the court may require the personal attendance of the defendant at any time."  Section 46-16-120, MCA.  "This language clearly allows all persons charged with misdemeanor offenses to appear through their attorney only unless the court specifically requires their personal appearance."  *State v. Voth*, 270 Mont. 349, 352, 892 P.2d 537, 539 (1995); *see also State v. Clark*, 2006 MT 313, ¶¶ 9-12, 335 Mont. 39, 149 P.3d 551.  Here, the Justice Court record reflects that Hass "was not present as ordered" at the time of his trial.  However, as we explained in *Voth*, there is a difference between specifically ordering a defendant "to appear" and specifically ordering a defendant "to *personally*

9

appear." 270 Mont. at 353, 892 P.2d at 539 (emphasis in original). The Justice Court did not specifically order Hass to *personally* appear. Thus, regardless of whether he was willfully absent, snowed in at Outlook, or deliberately ignorant of his trial date, he had a statutory right to "appear by counsel only," and that is what happened when Michael appeared on January 24.

¶20 Second, Article II, Section 24 guarantees that in all criminal prosecutions, the accused shall have the right to the assistance of counsel. *Chaussee*, ¶ 4. A defendant who does not have the means to hire an attorney is entitled to legal representation by court-appointed counsel at public expense. *Chaussee*, ¶ 4. The fundamental right to counsel in misdemeanor cases extends only to those cases in which a sentence of imprisonment is actually imposed. *State v. Walker*, 2008 MT 244, ¶ 17, 344 Mont. 477, 188 P.3d 1069. The defendant may waive the right to counsel; however, to be valid, any such waiver must be made voluntarily, knowingly, and intelligently. *Chaussee*, ¶ 4. Here, the Justice Court appointed Michael, a public defender, to represent Hass. Michael appeared in court at the designated time set for trial. The court allowed Michael to withdraw as counsel, thereby leaving Hass without legal representation. The court then proceeded with the trial and found Hass guilty of the charge. As part of his sentence, the court imposed actual jail time. Yet, at no point did the court obtain a voluntary, knowing, and intelligent waiver from Hass of his constitutional right to counsel.

¶21 We hold that the Justice Court's actions of permitting Hass's counsel to withdraw, thereby leaving Hass without legal representation, and then proceeding to try, convict, and sentence Hass to jail, without first obtaining from him a voluntary, knowing, and

10

intelligent waiver of his right to counsel, violated Article II, Section 24. Moreover, Hass had the right under § 46-16-120, MCA, to "appear by counsel only" on the misdemeanor DUI charge. His counsel appeared at the time set for trial. We hold that it was a denial of due process, in violation of Article II, Section 17, for the Justice Court to allow Hass's counsel to withdraw, without notice to Hass, and proceed with the trial in the absence of both Hass and his attorney, thereby denying his legal option not to attend his trial personally.

¶22 In attempting to rebut Hass's arguments, the State contends that the Justice Court properly tried Hass in absentia under § 46-16-122, MCA. This statute provides that in a misdemeanor case where the defendant fails to appear *in person*, "if the defendant's counsel is authorized to act on the defendant's behalf, the court shall proceed with the trial unless good cause for continuance exists." Section 46-16-122(1), MCA. But "[i]f the defendant's counsel is not authorized to act on the defendant's behalf . . . , the court, in its discretion, may do one or more of the following: (a) order a continuance; (b) order bail forfeited; (c) issue an arrest warrant; or (d) proceed with the trial after finding that the defendant had knowledge of the trial date and is voluntarily absent." Section 46-16-122(2), MCA. The State opines, based on Hass's lack of contact with Michael, that "Michael clearly did not believe he had authority to act on Hass's behalf." The State then infers from the record and the testimony that Hass either had knowledge of his trial date and was voluntarily absent, or kept himself deliberately ignorant of the trial date. Either way, the Justice Court had authority to proceed under § 46-16-122(2)(d), MCA.

11

¶23 We disagree with this analysis. For one thing, there is no evidence supporting the State's proposition that "Michael clearly did not believe he had authority to act on Hass's behalf." Michael never stated this. To the contrary, he testified that he felt he had no defense to put on and that continuing to represent Hass in absentia would be pointless. Michael stated: "If I thought that there was a shot at winning a case, with or without a Defendant, I would have tried it." Michael was authorized to act on Hass's behalf as his appointed counsel; Michael simply decided that it would be useless to do so.[2] Furthermore, the State's reliance on § 46-16-122, MCA, is unavailing in any event. The statute does not grant authority to proceed to trial in cases where the defendant has the right to counsel but has not voluntarily, intelligently, and knowingly waived that right. Nor does it authorize the court to take action which effectively denies the defendant his legal option under § 46-16-120, MCA, to appear by counsel only.

¶24 In sum, it is undisputed that Hass was represented by counsel, that his counsel appeared at the designated time set for trial, that the Justice Court allowed counsel to withdraw, and that the court proceeded forthwith to try and convict Hass in absentia. Hass has demonstrated that, on these facts, his 1994 DUI conviction is constitutionally infirm. The State has not met its burden of rebutting Hass's showing of invalidity.

---

[2] The mere fact that Michael believed he did not have a defense to offer did not necessarily mean that he was entitled to withdraw. Even without a defense, Michael could have attended the trial on his client's behalf, cross-examined witnesses, objected to evidence, moved to dismiss for insufficient evidence, notified his client of his right to appeal, and otherwise represented Hass's interests as best he could. Or he could have asked the court for a continuance so that his client could be notified of his withdrawal as counsel. This was his professional obligation.

¶25 The next question is the appropriate relief. Hass asks us to remand the case to the District Court with instructions to allow Hass "to withdraw his guilty plea and proceed accordingly." A defendant may be allowed to withdraw his or her guilty plea for "good cause." Section 46-16-105(2), MCA. Good cause includes the minimal constitutional requirement that a guilty plea be voluntary and intelligent. *State v. Deserly*, 2008 MT 242, ¶ 11, 344 Mont. 468, 188 P.3d 1057, *overruled on other grounds*, *State v. Brinson*, 2009 MT 200, ¶ 9, 351 Mont. 136, 210 P.3d 164. Ineffective assistance of counsel also can constitute good cause to allow the withdrawal of a guilty plea, as can the discovery of new evidence. *State v. Valdez-Mendoza*, 2011 MT 214, ¶ 14, 361 Mont. 503, 260 P.3d 151. Good cause may exist for other reasons as well. *Valdez-Mendoza*, ¶ 14.

¶26 Hass does not deny that he entered his guilty plea voluntarily, knowingly, and intelligently. *See State v. Bullplume*, 2009 MT 145, ¶ 27, 350 Mont. 350, 208 P.3d 378 (a plea of guilty must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant). Hass reserved his right to appeal the District Court's denial of his motion challenging the validity of his 1994 DUI conviction. The right which Hass sought to vindicate through this motion is his due process right not to be *sentenced* based upon misinformation. *Maine*, ¶ 28. As stated at the outset, a constitutionally infirm prior conviction used for enhancement purposes constitutes misinformation of constitutional magnitude, and the State may not use a constitutionally infirm conviction to support an enhanced punishment. *Maine*, ¶ 28.

¶27 In these circumstances, we do not believe there is good cause to permit Hass to withdraw his voluntary, knowing, and intelligent guilty plea to the DUI offense charged

13

in this case. The issue reserved by Hass in the plea agreement and presented by him on appeal pertains solely to the determination of the sentencing statutes that are applicable to his present offense—an offense to which he freely has admitted guilt. Had Hass not prevailed in this appeal, the felony DUI sentencing statutes would have applied. But since he has prevailed, the misdemeanor DUI sentencing statutes apply. We accordingly decline to disturb the judgment of conviction, but we do vacate the felony DUI sentence imposed by the District Court and remand for resentencing as a misdemeanor DUI.[3]

¶28 The last question is whether the District Court has jurisdiction over this case on remand. Hass framed his motion as one "to dismiss" due to an insufficient number of prior DUI convictions. He argued that the 1994 conviction was invalid, meaning he had only two prior DUI convictions in his lifetime. And since both of those convictions were also entered in the early 1990s (1991 and 1992), Hass asserted that the present offense was deemed to be a first-offense DUI under the five-year rule. *See* § 61-8-734(1)(b), MCA (2007). A first-offense DUI is a misdemeanor. *See* § 61-8-714(1), MCA (2007). Thus, the implication of Hass's approach is that if the present DUI offense is reduced to a misdemeanor, then the District Court lacks jurisdiction and the charge must be dismissed. We reject this reasoning.

---

[3] We took the same approach in *State v. Mann*, 2006 MT 33, 331 Mont. 137, 130 P.3d 164. There, the defendant pleaded guilty to the 2003 DUI that was the subject of the case, but he requested (and the district court allowed him) "to challenge the number of previous convictions that would be used to determine whether his 2003 DUI would be characterized as a felony or a misdemeanor." *Mann*, ¶ 5. The district court ruled against him, but we reversed. Agreeing with the defendant that two of his prior convictions were invalid, we remanded "exclusively for re-sentencing in accordance with misdemeanor DUI charges." *Mann*, ¶ 25.

¶29 The jurisdiction of a court depends on the state of facts existing at the time it is invoked. *State v. Martz*, 2008 MT 382, ¶ 28, 347 Mont. 47, 196 P.3d 1239. For the determination of the court's jurisdiction at the commencement of the action, the offense shall be designated a felony or misdemeanor based upon the maximum potential sentence which could be imposed by statute. *Martz*, ¶ 28. Here, when the prosecutor filed the Information, there were three presumptively valid prior DUI convictions in Hass's criminal record. Accordingly, Hass was charged with fourth-offense DUI, a felony. Hass has now successfully challenged one of his prior DUI convictions, thus reducing the present DUI offense to a misdemeanor. District courts have concurrent original jurisdiction with justice, municipal, and city courts over "misdemeanors resulting from the reduction of a felony . . . offense charged in the district court." Section 3-5-302(2)(b), MCA; *see also* §§ 3-10-303 (justice court criminal jurisdiction), 3-6-103 (municipal court jurisdiction), 3-11-102 (city court jurisdiction), MCA. Consequently, the District Court has jurisdiction on remand to resentence Hass for the current now-misdemeanor DUI offense.

**CONCLUSION**

¶30 We hold that Hass's 1994 conviction is constitutionally infirm and may not be used for sentence enhancement purposes. The District Court's decision denying Hass's motion challenging the validity of that conviction is, therefore, reversed. Hass's request to be allowed to withdraw his plea of guilty is denied. However, the felony DUI sentence imposed by the District Court is vacated. We remand this case to the District Court with instructions to resentence Hass for misdemeanor DUI.

15

¶31   Reversed and remanded for further proceedings in accordance with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER